# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Demetrius Bailey, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| C.O. James, C.O. Kauffman, | : | |
| Unit Manager Jen Digby, | : | |
| Superintendent Laurel Harry, | : | No. 73 M.D. 2021 |
| Respondents | : | Submitted: February 4, 2022 |

BEFORE:  HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                         FILED:  May 24, 2022

Before this Court are the Pennsylvania Department of Corrections (DOC) State Correctional Institution (SCI) at Camp Hill Superintendent Laurel Harry's (Superintendent Harry)[1] Preliminary Objections (Preliminary Objections) to Demetrius Bailey's (Petitioner) pro se Petition for Review (Petition) filed in this Court's original jurisdiction.  After review, this Court sustains Superintendent Harry's first Preliminary Objection and dismisses the Petition.

---

[1] Petitioner named Corrections Officer (C.O.) James (James), C.O. Kauffman (Kauffman), Unit Manager Jen Digby (Digby) and Superintendent Harry as respondents.  On May 25, 2021, DOC filed preliminary objections alleging lack of proper service.  On May 26, 2021, this Court ordered Petitioner to make proper service on all respondents and the Pennsylvania Office of Attorney General (Attorney General), or it would dismiss the Petition.  On June 14, 2021, finding that Petitioner only served Superintendent Harry and the Attorney General's office, this Court dismissed James, Kauffman, and Digby from the action.

**Facts**[2]

Petitioner is currently incarcerated at SCI-Camp Hill. On March 15, 2021, Petitioner filed the Petition generally alleging that Superintendent Harry has retaliated against him and denied him access to the courts by stealing and/or destroying boxes of legal documents relating to his criminal appeals and confining him to the Restricted Housing Unit (RHU), thereby violating his constitutional rights. Specifically, Petitioner claims such actions have deprived him of his First Amendment right to free speech,[3] his right to equal protection[4] and his constitutional right to access the courts.[5] *See* Petition at 3. Petitioner also complains that Superintendent Harry violated a federal civil settlement agreement (Settlement Agreement).

On July 8, 2021, Superintendent Harry filed the Preliminary Objections to the Petition alleging: (1) lack of personal involvement in the alleged civil rights violations; (2) Petitioner's failure to state a claim upon which relief can be granted; and (3) lack of this Court's jurisdiction to enforce the Settlement Agreement. On July 12, 2021, Petitioner filed his answer opposing the Preliminary Objections. The Preliminary Objections are now ripe for disposition.

---

[2] The following facts are as alleged in the Petition.

[3] U.S. Const. amend. I.

[4] Section 1 of the Fourteenth Amendment to the United States (U.S.) Constitution provides:

> All persons born or naturalized in the [U.S.], and subject to the jurisdiction thereof, are citizens of the [U.S.] and of the [s]tate wherein they reside. No [s]tate shall make or enforce any law which shall abridge the privileges or immunities of citizens of the [U.S.]; nor shall any [s]tate deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

[5] "[I]nmates have a 'fundamental constitutional right of access to the courts.'" *Bussinger v. Dep't of Corr.*, 29 A.3d 79, 84 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013) (quoting *Bronson v. Horn*, 830 A.2d 1092, 1095-96 (Pa. Cmwlth. 2003), *aff'd*, 848 A.2d 917 (Pa. 2004)).

## Discussion

In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, **it must appear with certainty that the law will not permit recovery**, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review] and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. **When ruling on a demurrer**, **a court must confine its analysis to the** [**petition for review**].[6]

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (emphasis added; citations omitted).

### First Preliminary Objection: Demurrer - Lack of Personal Involvement

Superintendent Harry first avers that the Petition should be dismissed because it does not include any factual allegations describing her personal participation in the alleged civil rights violations. Specifically, Superintendent Harry contends:

Petitioner fails to allege any facts whatsoever to indicate [Superintendent] Harry [] was personally involved with the alleged handling of Petitioner's legal documents, the decision to house Petitioner in the RHU, or had any

---

[6] "'[C]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review], but also any documents or exhibits attached to it.' *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)." *Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019). Although the Petition references an "Exhibit B," no exhibits were attached thereto.

3

involvement in the alleged failure to comply with Petitioner's [S]ettlement [A]greement. In fact, [Superintendent] Harry [] is only mentioned in the caption of the Petition, and there is no mention of her in the body of the Petition as it pertains to the factual allegations. Petitioner's broad, conclusory allegations in the Petition only underscore that [Superintendent] Harry [] has been sued by virtue of her supervisory role as the Superintendent of SCI-Camp Hill rather than any direct actions she undertook relative to Petitioner's constitutional claims.

Superintendent Harry Br. at 12.

In *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988),[7] the Third Circuit Court of Appeals explained:

A defendant in a civil rights action must have **personal involvement in the alleged wrongs**; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made **with appropriate particularity**.

*Id*. at 1207 (emphasis added; citations omitted); *see also Horan v. Wetzel* (Pa. Cmwlth. No. 1425 C.D. 2013, filed May 28, 2014).[8] Further, a civil rights complaint must allege facts identifying "the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). A "[petitioner] must allege the **personal involvement** of each [respondent] to state a claim against them under

---

[7] "'Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value.' Unreported federal court decisions may also have persuasive value." *Nagle v. Trueblue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016) (quoting *GGNSC Clarion LP v. Kane*, 131 A.3d 1062, 1069 n.15 (Pa. Cmwlth.), *aff'd*, 152 A.3d 983 (Pa. 2016)).

[8] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Horan* is cited for its persuasive value.

4

Section 1983[, 42 U.S.C. § 1983]." *Reed v. Chambersburg Area Sch. Dist.*, 951 F. Supp. 2d 706, 719 (M.D. Pa. 2013) (emphasis added).

The United States (U.S.) Supreme Court restated that "vicarious liability is inapplicable to . . . [civil rights lawsuits], [thus,] a [petitioner] must plead that each [g]overnment-official [respondent], **through the official's own individual actions**, has violated the [U.S.] Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added); *see also Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010) (holding that a prison superintendent was not legally responsible merely by reviewing a prisoner's grievances for his staff's alleged retaliatory acts against the prisoner, when the prisoner did not aver the superintendent's actual knowledge of the retaliation).

In *West v. Varano* (M.D. Pa. No. 1:10-CV-2637, filed August 1, 2013, adopted August 29, 2013), 2013 U.S. Dist. LEXIS 123882, a U.S. Magistrate Judge for the Middle District of Pennsylvania considered an action under the Eighth Amendment to the U.S. Constitution[9] brought against a prison superintendent, explaining:

> [The inmate] names [the prison superintendent] as a defendant on his Eighth Amendment deliberate indifference claim, but his pleading contains absolutely no factual allegations relating to this defendant beyond his assertion that the defendant had oversight responsibilities for the operation of the prison. In considering claims brought against supervisory prison officials arising out of alleged constitutional violations, the courts recognize that **supervisors may be exposed to liability only in certain, narrowly defined, circumstances**.
>
> **Thus**, **it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred**. Quite the

---

[9] U.S. Const. amend VIII (relating to cruel and unusual punishment).

contrary, to state a constitutional tort claim the plaintiff **must show that the supervisory defendants actively deprived him of a right** secured by the [U.S.] Constitution. *Morse v. Lower Merion Sch*[.] *Dist.*, 132 F.3d 902 (3d Cir. 1997); *see also Maine v. Thiboutot*, 448 U.S. 1 . . . (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.

*West*, slip op. at __, 2013 U.S. Dist. LEXIS 123882, at *22-*24 (emphasis added).

Recommending the prison superintendent's dismissal from the lawsuit, the U.S. Magistrate Judge concluded:

[The inmate] does not allege that [the prison superintendent] directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance [the inmate] simply alleges the superintendent was legally responsible for the overall operation of the prison. To the extent that [the inmate] premises liability of this particular defendant upon the assertion that he was legally responsible for the overall operation of the institution, without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant.

*Id.* at __, 2013 U.S. Dist. LEXIS 123882, at *22-*26.

Here, Petitioner alleges, in relevant part:

3.) Around December 2019, while at SCI-Somerset[, its] superintendent assistant approved [Petitioner] to have (4) extra legal boxes of legal documents for [his] active criminal appeals and civil actions along with [his] personal [and] legal mail, (1) foot locker, [and] (6) record boxes of legal documents after being incarcerated for (26) years[.] [O]n top of that [he had] clothes, hyg[iene] products, sneakers, T.V., radio, typewriter, tablet, commissary, photos, etc. . . .

6

4.) On [January 6, 2020, Petitioner] signed [the] Settlement Agreement with [DOC to] transfer [Petitioner] to SCI-Camp Hill with all [of his] legal property [and] personal property . . . .

5.) Respondents did not follow the Settlement Agreement and [Petitioner] made the Federal [sic] aware no action was taken so [r]espondents took it upon themselves to intentionally, illegally, willfully[,] [sic] recklessly on N-Block continue to retaliate against [Petitioner] for winning this settlement and violate [Petitioner's] constitutional right[s] [and violate various state statutes].

6.) From [November 10, 2020] to [February 9, 2021], N-Block has been on enhanced quarantine for [an] outbreak of COVID-19, and the only thing Petitioner could do was continue to fight his juvenile life sentence and his lawsuits in which he filed Civil Action No. 3120-CV-0762 against [r]espondents [and] SCI-Camp Hill staff.  Due to filing this lawsuit[,] [r]**espondents on N-Block continue to retaliate** for [sic] [Petitioner] exercising his constitutional right to complain.

7.) On [February 24, 2021], **Security Capt**[**ain**] **Becker**, **Security** [**Lieutenant**] **Francis**, [and **Lieutenant**] **Burkefelt** intentionally [and] illegally lock[ed] [Petitioner] in the RHU out of retaliation for filing [a] lawsuit against [the] security office and fraudulent reports by racist white female staff nurses to interfere with [Petitioner's] legal documents/materials to challenge his convictions & illegal sentences.

8.) On [February 26, 2021], [r]espondents stole/destroyed (3) boxes of legal documents to [sic] [Petitioner's] criminal appeals, trial & [Post Conviction Relief Act[10]] hearing . . . (300) photographs . . . and a lot of my [family] members are dead so my pictures of my grandmother [have] sentimental value . . . .

Petition at 2-3 (emphasis added).

Importantly, Petitioner does not allege in his Petition that Superintendent Harry, an SCI supervisor, "**through** [**her**] **own individual actions**,

---

[10] 42 Pa.C.S. §§ 9541-9551.

has violated the [U.S.] Constitution." *Ashcroft*, 556 U.S. at 676 (emphasis added). In fact, of those original respondents named in the Petition, Petitioner does not identify the specific respondent(s) to which he refers in Petition paragraphs 5, 6, and 8, nor the manner in which supervisory staff, such as Superintendent Harry, were allegedly involved.

The U.S. District Court for the Eastern District of Pennsylvania recently dismissed claims against defendants, explaining:

> [A]n individual must be personally involved in violating a plaintiff's rights to be liable [for a civil rights violation]. However, the [c]omplaint does not describe how any of these individuals violated [the plaintiff's] rights. Although [the plaintiff] at times alleges that the "defendants" engaged in certain conduct, where there are multiple events and defendants at issue, **a plaintiff generally cannot state a claim by repeatedly and collectively referring to the "[d]efendants" as a group without clarifying the specific basis for each [d]efendant's liability**. *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that ["]the repeated and collective use of the word '[d]efendants' 'fail[ed] to name which specific [d]efendant engaged in the specific conduct alleged'").

*Butler v. Lehigh Cnty. Jail* (E.D. Pa. No. 22-CV-0229, filed Feb. 15, 2022), slip op. at ___, 2022 U.S. Dist. LEXIS 26672, at *9 (emphasis added).

Here, Petitioner makes no specific allegation directly identifying Superintendent Harry as a perpetrator, or what act, if any, she allegedly committed.[11] Petition at 2-3. Petitioner's general reference to "[r]espondents" in his allegations does not adequately state a civil rights claim. *See Butler.* By identifying "[r]espondents" collectively, Petitioner does not allege Superintendent Harry's

---

[11] *See Lawal*, 546 F. App'x at 113 ("As a result [of the plaintiff's repeated and collective use of the word *defendants* and failure to identify which defendant participated in the conduct], the [a]mended [c]omplaint is ambiguous about each [d]efendant's role in the operation and whether he committed the act himself or supervised other agents in doing so.").

8

"personal direction" or "actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. Thus, Petitioner does not make his allegations of Superintendent Harry's participation with "appropriate particularity." *Id*.

Further, the fact that Petitioner identified the specific individuals who allegedly confined him to the RHU, in Petition paragraph 7, reflects that had Petitioner known which individuals committed the acts in Petition paragraphs 5, 6, and 8, he would have so stated.[12] Absent any specific allegations describing her specific participation, Petitioner's allegations against Superintendent Harry appear to be "premised merely on the fact that [Superintendent Harry] was a prison supervisor when the incidents set forth in the [Petition] occurred." *West*, slip op. at __, 2013 U.S. Dist. LEXIS 123882, at *23. Accordingly, Petitioner has failed to state a valid claim against Superintendent Harry.[13]

---

[12] In fact, according to Petition paragraph 7, Petitioner's confinement in the RHU was allegedly brought about by persons not named as respondents in this action.

[13] On July 14, 2021, Petitioner filed a document titled *Bailey Objects to Respondent's Preliminary Objections to the Petition for Review*, wherein Petitioner responded to the Preliminary Objections, claiming that Superintendent Harry was unhappy with the Settlement Agreement and, further,

> [w]ith respect to [Superintendent Harry]'s [P]reliminary [O]bjection that [Petitioner] failed to sufficiently allege personal involvement on Superintendent Harry is in error due to after being transfer[red] to SCI-Camp Hill on [January 9, 2020], I spoke with [Superintendent] Harry about [sic] I need her to [a]pprove my (4) [e]xtra [l]egal [b]oxes for active pending cases and filed a complaint to her[.] [S]he stated nobody [sic] going to touch your [l]egal [p]roperty[,] so she was aware of the situation from the start, [and] her failure to answer the complaint in writing, was intentionally [sic] so she allowed [] James, [] Kauf[f]man, [and] Digby to [d]estroy/[c]onfiscate my [c]riminal [c]ase [n]otes/[r]esearch, [t]ranscripts by stating that I have excess property [which was] error when all my [l]egal [d]ocuments [were] received through the [l]egal [m]ail [p]rocess [p]olicy in which I have a [f]irst [a]mendment [r]ight to obtain.

*Id*. at 2, ¶ 4. Notwithstanding Petitioner's assertions, this Court "must confine its analysis to the" Petition and any documents or exhibits attached thereto. *Torres*, 997 A.2d at 1245.

**Conclusion**

For all of the above reasons, Superintendent Harry's first Preliminary Objection is sustained and the Petition is dismissed.[14]

_____
ANNE E. COVEY, Judge

---

[14] Given this Court's disposition of the first Preliminary Objection, it does not reach Superintendent Harry's other Preliminary Objections.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Demetrius Bailey,                              :
                Petitioner      :
                                 :
        v.                              :
                                 :
C.O. James, C.O. Kauffman,              :
Unit Manager Jen Digby,                   :
Superintendent Laurel Harry,             :    No. 73 M.D. 2021
               Respondents      :

## O R D E R

AND NOW, this 24th day of May, 2022, Superintendent Laurel Harry's first Preliminary Objection to Demetrius Bailey's (Bailey) Petition for Review (Petition) is SUSTAINED and Bailey's Petition is DISMISSED.

                           _____

                           ANNE E. COVEY, Judge